IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

SEEMIA Y. S.,[1]
    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　Civil No. 3:20-cv-00745 (JAG)

KILOLO KIJAKAZI,[2]
Acting Commissioner of Social Security,
    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits and supplemental security income under the Social Security Act ("Act"). At the time of her application date, Plaintiff was a forty-five year-old high school graduate who previously worked as a daycare provider and security guard. (R. at 17, 258-59.) Plaintiff alleges she is unable to work because of carpal tunnel syndrome, sciatica, hand/wrist/arm pain, diabetes, a brain cyst, headaches, tendonitis, fluid retention, neck pain, and high blood pressure. (R. at 10, 257.)

On September 26, 2019, an Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (R. at 18.) This matter comes before the Court for a Report and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Acting Commissioner Kilolo Kijakazi should be substituted for former Commissioner Andrew M. Saul as the defendant in this matter.

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[3]

Plaintiff now seeks review of the ALJ's decision, arguing that the ALJ's decision is not supported by substantial evidence. (Pl.'s Mem. Supp. Mot. Summ. J. 1, ECF No. 22 ("Pl.'s Mem.").) For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 21) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 27) be GRANTED and the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and supplemental security income on January 17, 2018, alleging disability beginning May 1, 2016. (R. at 10, 266.) The Social Security Administration ("SSA") denied Plaintiff's claim on July 27, 2018 (R. at 191) and again upon reconsideration on October 17, 2018. (R. at 182, 206.) Plaintiff requested a hearing before an ALJ, and a hearing was held on August 20, 2019. (R. at 33, 94-125.) On September 26, 2019, the ALJ issued a written opinion, holding that Plaintiff was not disabled under the Act. (R. at 18.) Plaintiff requested review of the ALJ's decision, and on July 20, 2020, the SSA Appeals Council denied it and rendered the ALJ's decision as the final decision of the Commissioner. (R. at 1-6.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the Commissioner based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. If substantial evidence in the record does

not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude him from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. §§ 416.920(e), 404.1520(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 10-18.) *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation).

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 1, 2016, her alleged onset date. (R. at 12.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "bilateral ulnar neuropathy, degenerative disc disease, obesity, and meningioma status post-resection." (R. at 12.) At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13.)

The ALJ then determined Plaintiff's residual functional capacity. (R. at 14.) Based on the evidence in the record, the ALJ determined that Plaintiff retained the ability to perform light work, except she can "only occasionally climb ramps or stairs, balance, kneel, crouch, or crawl, can never climb ladders, ropes, or scaffolds, and can only frequently handle, finger, or feel with her bilateral upper extremities." (R. at 14.)

The ALJ explained that she determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," in accordance with the regulations. (R. at 14.) Based on her residual functional capacity findings, the ALJ concluded at step four that Plaintiff is capable of performing past relevant work as an armed security guard and a teacher's aide. (R. at 16.) She explained that "[t]hese positions do not require the performance of work-related activities precluded by the claimant's residual functional capacity." (R. at 16.)

Although not required because Plaintiff is capable of performing past relevant work, the ALJ issued alternative findings at step five, finding that there are other jobs that exist in significant numbers in the national economy that Plaintiff can also perform. (R. at 17.) The ALJ considered the testimony of a vocational expert, who opined that Plaintiff could perform the requirements of occupations such as cashier and marker. (R. at 18.) Therefore, the ALJ determined that Plaintiff is not disabled under the Act. (R. at 18.)

## IV. ANALYSIS

Plaintiff argues that the ALJ's decision must be remanded because it is not supported by substantial evidence. (Pl.'s Mem. at 17.) In particular, Plaintiff avers that the ALJ: (1) failed to fully develop the record; and (2) failed to point to sufficient evidence supporting her conclusion that Plaintiff "can only frequently handle, finger, or feel with her bilateral upper extremities." (R. at 14.) (Pl.'s Mem. at 16). Defendant responds that: (1) the ALJ fully developed the record and did not require additional information not already in her possession; and (2) the regulations do not require the ALJ to rely on any medical opinion when evaluating Plaintiff's claim. (Def.'s Mem. at 14-16). For the reasons that follow, this Court finds that the ALJ did not err in her findings.

### A. The ALJ Fully Developed the Record.

In addition to applying the correct legal standards in her analysis, an ALJ has an obligation "to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986) (emphasis added). Since *Cook*, the Fourth Circuit has clarified that an ALJ "is not required to act as plaintiff's counsel," but must "fully and fairly develop the record" once a claimant has made a prima facie showing of entitlement to benefits. *Rice v. Chater*, No. 94-2001, 1995 U.S. App. LEXIS 9829, at *5 (4th Cir.

May 1, 1995) (citations omitted); *see also Bell v. Chater*, 1995 U.S. App. LEXIS 14322, at *12-13 (4th Cir. June 9, 1995).

To determine "whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contains sufficient evidence." *Anderson v. Astrue*, No. 10-3084, 2011 U.S. Dist. LEXIS 141527, at *6 (W.D. Ark. Oct. 4, 2011) (citations omitted). Where substantial evidence in the record supports an ALJ's finding as to a particular issue, the record is considered to be sufficiently developed. *See Mink v. Apfel*, 2000 U.S. App. LEXIS 11559, at *5 (4th Cir. May 22, 2000). However, the absence of substantial evidence to support an ALJ's finding not only exposes an ALJ's determination to potential reversal, but also may indicate that an ALJ has failed to develop the record sufficiently. *See Loving v. Astrue*, Civil Action No. 3:11cv411-HEH, 2012 U.S. Dist. LEXIS 134906 (E.D. Va. Sep. 20, 2012).

An ALJ's failure to adequately develop the record warrants remand where the failure results in prejudice or unfairness to the claimant. *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *see also Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995); *Mann v. Astrue*, No. 5:07-201, 2008 U.S. Dist. LEXIS 26618, at *17 (S.D.W. Va. Mar. 31, 2008). In other words, remand is improper "unless the claimant shows that he or she was prejudiced by the ALJ's failure. To establish prejudice, a claimant must demonstrate that he or she could and would have adduced evidence that might have altered the result." *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000) (citations omitted); *Roseberry v. Colvin*, 2016 U.S. Dist. LEXIS 57787, at *14 (S.D.W. Va. Mar. 31, 2008).

A review of the administrative record demonstrates that the ALJ properly developed the record. First, she informed Plaintiff of the ALJ's duty to identify any treatment Plaintiff received that was not reflected in the file and to obtain any additional files before issuing her decision. (R. at 98.) Plaintiff's attorney represented that Plaintiff had an opportunity to review the file before

7

the hearing and declined to present any additional evidence. (R. at 98.) Second, the ALJ questioned Plaintiff extensively about her education, vocation, medical background, symptoms, and treatment. (R. at 102-116.) Plaintiff has a high school diploma, reads both fiction and non-fiction, and can do basic-level math, which suggests that she is not amongst those claimants of limited education or cognition for whom an ALJ's duty to develop the record is even greater. (R. at 104, 114-16.)

Third, the ALJ's review of Plaintiff's disability determination also demonstrates the completeness of the record. The ALJ discussed Plaintiff's history of obesity and degenerative disc disease, citing to records indicating Plaintiff's body-mass index and lumbar spine imaging showing abnormalities. (R. at 15). She explained that the medical record generally indicates normal strength and mobility, no gait abnormalities, and mild disc degenerative changes with no neural foraminal narrowing. (R. at 15.)

The ALJ also analyzed Plaintiff's history of ulnar neuropathy by reviewing imaging and doctor's notes regarding Plaintiff's hand mobility and strength. (R. at 15.) The ALJ acknowledged the records which indicated that Plaintiff had reduced hand and finger function and explained that Plaintiff exhibited "the most severe reduced hand function on occasions when treatment providers noted poor effort in the examination. (R. at 15.) For example, one provider noted that since Plaintiff "has no objective evidence of any atrophy," the provider was unable to understand why Plaintiff was completely incapable of abducting her fingers. (R. at 15.) While Plaintiff underwent carpal tunnel release surgery in 2015, she had not yet received surgical treatment for her left side impairment. (R. at 15.)

Finally, the ALJ considered Plaintiff's meningioma symptoms, which she found were "mostly resolved after treatment." (R. at 15.) She noted that there is no indication in the record of

8

the recurrence or persistence of the headaches, and post-operative imaging showed no abnormalities. (R. at 15.) Nonetheless, the ALJ gave deference to Plaintiff and found that Plaintiff's meningioma symptoms contributed to her exertional, postural and manipulative limitations. (R. at 15-16.)

Based on the evidence available, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. at 15.) Plaintiff contends that the ALJ "connects absolutely zero evidence to her determination that Plaintiff can frequently handle, finger, or feel." (Pl.'s Mem. at 13.)

This Court disagrees and finds that this issue was sufficiently explored. To the extent that Plaintiff argues that the ALJ "chose to estimate what Plaintiff's limitations entailed instead of following through on her duty to develop the record[,]" it is clear that the ALJ found that Plaintiff's ulnar neuropathy "causes her manipulative limitations." (R. at 15.) (Pl.'s Mem. at 13). Therefore, Plaintiff has not demonstrated prejudice resulting from any alleged failure of the ALJ to fully develop the record, nor has she identified additional medical records in existence for the ALJ to obtain. Instead, Plaintiff makes an unsupported allegation that the ALJ should have explored her medical conditions more fully or sought further information to assist her in her findings. (Pl.'s Mem. at 16.) The Court finds that the ALJ was not required to further develop the record where there was sufficient evidence in the record that enabled the ALJ to make a disability determination.

      **B.**    **The ALJ Did Not Err in Her Residual Functional Capacity Assessment When She Evaluated the Medical Opinions.**

Plaintiff similarly argues that the ALJ failed to support her residual functional capacity assessment when she found the medical opinions persuasive as to Plaintiff's exertional and

9

postural limitations, but not persuasive as to her manipulative limitations. (Pl.'s Mem. at 14). Specifically, Plaintiff argues that the ALJ did not have sufficient evidence to formulate an opinion as to Plaintiff's manipulative limitations because she did not rely on the medical opinion evidence. (R. at 16.)

For social security disability cases filed after March 27, 2017, an ALJ evaluates medical opinions in accordance with 20 C.F.R. § 416.920c.3 Consideration of medical opinions is expressed in terms of how persuasive they are. 20 C.F.R. § 416.920c(b). Medical opinions are evaluated for supportability, consistency, relationship with the claimant (including length of the treatment, relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship), specialization, and other factors that tend to support or contradict a medical opinion. The most important factors are supportability and consistency. 20 C.F.R. § 416.920c(b) and (c). An ALJ does not defer or give specific evidentiary weight to any medical opinion, including those from a claimant's medical source. 20 C.F.R. § 416.920c(a). Although the amended regulations no longer discuss the "weight" given to medical opinions, an ALJ's reason for finding an opinion persuasive or unpersuasive still must be supported by substantial evidence.

The crux of Plaintiff's argument is that if the ALJ had found the opinions of Gene Godwin, M.D. ("Dr. Godwin") and Robert McGuffin, M.D. ("Dr. McGuffin") to be unpersuasive as to Plaintiff's manipulative limitations, there is insufficient evidence to support her finding that Plaintiff can "only frequently handle, finger, or feel with her bilateral upper extremities." (R. at 14) (Pl.'s Mem. at 16.) Plaintiff reasons that when the ALJ was presented unpersuasive medical opinion evidence, the ALJ impermissibly substituted her own lay opinion by interpreting raw medical data in functional terms. (Pl.'s Mem. at 11, 13-15).

10

Under the regulations promulgated for claims filed after March 27, 2017, an ALJ need not "defer . . . to any medical opinion." 20 C.F.R. §§404.1520c(a), 416.920c(a). The agency requires the ALJ to use a "reasonable articulation standard" that "does not require written analysis about how [the ALJ] considered each piece of evidence." 82 Fed. Reg. 5844-01, at 5858. An ALJ has the discretion to seek additional or clarifying information if the information already in her possession is insufficient to determine whether the claimant is disabled or not. 20 C.F.R. §§ 404.1520b(b)(2)(i), 416.920b(b)(2)(i); *see e.g.,* 20 C.F. R. §§ 404.1520b(b)(1), 416.920b(b)(1) ("If any of the evidence in your case record, including an medical opinion(s) . . . . is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have."

In this case, the ALJ found Dr. Godwin's and Dr. McGuffin's assessments that Plaintiff had no manipulative limitations unpersuasive because "the medical evidence of record establishes that the claimant has a severe impairment of ulnar neuropathy in both upper extremities, with resulting limitations in the claimant's ability to make use of her hands for work activities." (R. at 16.) Indeed, Drs. Godwin and McGuffin found that Plaintiff had *no* manipulative limitations (R. at 136, 150, 164, 178), and the ALJ concluded, based on the entirety of the evidence presented, that these particular assessments did not place *enough* limitations on Plaintiff's ability to use her hands. (R. at 16.)

In the narrative discussion, the ALJ described how the evidence regarding Plaintiff's ulnar neuropathy supported her conclusion that it "causes her manipulative limitations." (R. at 15.) The ALJ cited specific medical facts, including electromyography findings, depicting severe right side ulnar and moderate left side neuropathy. (R. at 15.) She also discussed the nonmedical evidence, such as Plaintiff's inability to cook., clean, or do household chores when her hand conditions flare-

11

up. (R. at 15.) She supplemented that with Plaintiff's ability to read, play smartphone games, prepare simple meals, make her bed, do light chores, go outside, and shop for groceries. (R. at 15.) *See generally* Titles II and XVI: Assessing Residual Functional Capacity In Initial Claims, SSR 96-8P, 1996 WL 374184, at *7 (July 2, 1996) (a residual functional capacity "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)."). In doing so, the ALJ sufficiently identified the evidence that supported her conclusion and built an accurate and logical bridge from that evidence to her conclusion that Plaintiff can only frequently handle, finger, or feel with her bilateral upper extremities. (R. at 14-16.) Therefore, this Court finds that substantial evidence supports the ALJ's residual functional capacity evaluation and that the ALJ did not err when she evaluated the medical opinion evidence.

## V. CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 21) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 27) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge John A. Gibney, Jr. and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                               /s/ *MRC*
                                                     Mark R. Colombell
                                                     United States Magistrate Judge

Richmond, Virginia
Date: January 27, 2022